ROBERT S. BREWER, Jr.
United States Attorney
Deborah E. Bercovitch
Special Assistant U.S. Attorney
Massachusetts Bar No. 657592
Office of the U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-6345
Email: Deborah.bercovitch@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 19-CR-4609 |
|---|---|
| Plaintiff, | **UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO AMEND CONDITIONS OF RELEASE** |
| v. | |
| FRANCISCO MIRANDA ESPINOZA, | Honorable Bernard G. Skomal |
| Defendant. | |

The UNITED STATES OF AMERICA, by and through its counsel, Robert S. Brewer, Jr., United States Attorney, and Deborah Bercovitch, Special Assistant U.S. Attorney, hereby responds in opposition to defendant's Motion to Amend Conditions of Release.

## INTRODUCTION

This Court previously ordered Defendant released on a $30,000 bond, secured by two financially responsible adults with a $3000 cash deposit. Defendant now moves this Court to amend its previously-imposed bond conditions and order him released from custody on $10,000 bond secured by his own signature. Defendant does not challenge the court's factual findings underlying its original order. Instead, his request for release from custody is based almost entirely on the speculative prospect of a COVID-19 outbreak at the facility where he is being detained pending trial. Defendant's speculation is both unsubstantiated and unwarranted. There are no known cases of COVID-19 at the facility

1  and no evidence that the facility's staff is unprepared to address such cases if they should
2  arise. Accordingly, the Court should deny the motion.

3  **STATEMENT**

4  On August 30, 2019, Defendant attempted to enter the United States at the San
5  Ysidro Port of Entry as a passenger in a vehicle. Defendant was partially covered in a
6  blanket and appeared to be sleeping in the third row of the vehicle when a Customs and
7  Border Protection Officer encountered him at Primary Inspection. When asked, Defendant
8  identified himself verbally, and with the use of a birth certificate that was not his own, as
9  seventeen-year old "Oscar Miranda". Officer Hanlon referred the vehicle to Secondary
10  Inspection where Defendant pretended to sleep through the Secondary Inspection Officer's
11  interviews of the other four occupants of the vehicle. The driver, however, identified him
12  as her son; seventeen-year old "Oscar". As Defendant appeared much older than seventeen,
13  Officer Hurtado placed him in handcuffs.

14  Defendant was fingerprinted at the Port of Entry and his prints and photo were
15  submitted to government databases. These databases showed that Defendant had been
16  ordered removed from the United States by an Immigration Judge on December 13, 2016.
17  Defendant was physically removed more than once and his last removal was on or about
18  November 27, 2018. In a post *Miranda* statement, Defendant stated that he is a citizen and
19  national of Mexico that had lost legal status to live in the United States after being
20  convicted of an aggravated felony.

21  On November 14, 2019, a two count indictment was filed charging Defendant with
22  unlawful attempt, by an alien, to enter the United States by a willfully false or misleading
23  §1325(a)(3), and with being a removed alien found in the United States, in violation of 8
24  U.S.C. §§ 1326(a) & (b).  After partial litigation of a motion to dismiss under 8 U.S.C.
25  §1326(d), the United States moved to dismiss the indictment under §§1326(a) & (b). *See*
26  ECF No.26 &27.

27  Defendant has criminal history relevant to a bond determination. On September 1,
28  2016, Defendant was convicted of delivery/manufacture a controlled substance

(methamphetamine) in Dearborn, Michigan and placed on probation for two years. Defendant was removed from the United States after his 2016 conviction and subsequently returned.  He was charged with unlawful reentry of a removed alien under 8 U.S.C.§1326 on July 17, 2018 in the Eastern District of Michigan and convicted of that offense on October 30, 2018.  Defendant received a time served sentence and a period of three years of supervised release. Defendant was on supervised release at the time of this offense.

## ARGUMENT

Title 18, United States Code, Section 3142(g) sets forth the factors courts shall consider when determining whether "there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community."  These factors include, among others, (1) the "nature and circumstances of the offense charged," (2) the "weight of the evidence against" the defendant, and (3) the "history and characteristics" of the defendant, including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g). Categorical grants or denials of bail, untethered from an individualized determination, are impermissible. *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). That is because "the Bail Reform Act mandates an individualized evaluation guided by the factors articulated in § 3142(g)." *Id*.

Section 3142(f) provides that a detention hearing may be reopened if: (1) the movant, whether prosecutor or defendant, first establishes that new information now exists that was not known to the movant at the time of the detention hearing, and (2) that the new information has a material bearing on release conditions regarding flight risk or dangerousness. *United States v. Dillon*, 938 F.2d 1412 (1st Cir. 1991). In other words, the unknown information is material if it increases the chances the defendant appears for his criminal hearing or decreases the danger the defendant poses to an individual or the

community as a whole. The rationale behind this provision is that "a rule that would not discourage a party for failing to acquire readily available evidence for presentation the first time is a rule that encourages piecemeal presentations. Judicial efficiency is not served by such a practice." *United States v. Tommie*, 2011 WL 2457521 at *2 (D. Ariz. June 20, 2011) (citing *United States v. Bowens*, 2007 WL 2220501 at *1 (D. Ariz. July 31, 2007) (emphasis in original)).

In this case, none of the 3142(g) factors has changed in the months since this Court ordered Defendant released on a $30,000 bond. Defendant argues that he is not a risk of flight because he has family in the United States and has hired an immigration attorney to reopen his immigration court matter.  However, his position with respect to ties to the United States has not significantly changed since his initial appearance and bond hearing. Defendant's ties to the community remain the same as they were in October, 2019 when bond was set by the Magistrate Judge.  *See* Dckt. No. 19CR03791 ECF No. 10, 18 and 19. Further, the dismissal of the indictment charging Defendant with illegal reentry is not demonstrative of the likelihood of success in Defendant's immigration court case nor is it demonstrative of his likelihood to re-establish status as a Legal Permanent Resident (LPR). Defendant's circumstances in these respects have not materially changed.

Defendant also focuses his motion on the health risks he faces from a potential COVID-19 outbreak. To be sure, the Bail Reform Act instructs the Court to consider a defendant's own "physical and mental health," 18 U.S.C. § 3142(g)(3)(A), but the general existence of a pandemic does not have significant bearing on that assessment. Currently, there are no reported cases of COVID-19 at any of the local facilities operated by the Bureau of Prisons (BOP). And Defendant does not claim to be infected with the coronavirus such that he might cause an outbreak himself. Instead, Defendant relies on the possibility that he will become infected by someone else at the facility. Even if this Court could weigh such a speculative risk (and properly discount it by risk of Defendant's becoming infected in the community), Defendant's concern is misplaced.

The BOP has been planning for potential coronavirus transmissions since January. On March 13, 2020, BOP announced that it was implementing the Coronavirus Phase Two Action Plan in order to minimize the risk of COVID-19 transmission into and inside its facilities.[1] The Action Plan comprises several preventive and mitigation measures, including the following:

Screening of Inmates and Staff:  All new BOP inmates are screened for COVID-19 symptoms and risk of exposure. Asymptomatic inmates with a documented risk of exposure will be quarantined; symptomatic inmates with documented risk of exposure will be isolated and tested pursuant to local health authority protocols. In areas with sustained community transmission, all facility staff will be screened for self-reported risk factors and elevated temperatures. (Staff registering a temperature of 100.4 degrees F or higher will be barred from the facility on that basis alone.)

Quarantine Logistics:  The Action Plan directs all BOP institutions to assess their stockpiles of food, medicines, and sanitation supplies and to establish quarantine areas within their facilities to house any detainees who are found to be infected with or at heightened risk of being infected with coronavirus pursuant to the above-described screening protocol. Here in San Diego, the MCC has implemented protocols to quarantine any inmate with flu-like symptoms since late January, 2020.

Suspension of Social Visits and Tours:  BOP has placed a 30-day hold on all social visits, such as visits from friends and family, to limit the number of people entering the facility and interacting with detainees. In order to ensure that familial relationships are maintained throughout this disruption, BOP has increased detainees' telephone allowance to 500 minutes per month. Tours of facilities are also suspended for at least the next 30 days.

Suspension of Legal Visits:  BOP has also placed a 30-day hold on legal visits, though such visits will be permitted on a case-by-case basis after the attorney has been

---

[1] *See* Action Plan, available at https://www.bop.gov/resources/news/20200313_covid-19.jsp (last visited March 18, 2020 at 11:00 a.m. PST).

1   screened for infection in accordance with the screen protocols for prison staff. In San
2   Diego, the MCC has suspended all in-person legal visits until at least April 13, 2020.

3       <u>Suspension of Inmate Movements</u>:  BOP has also ceased the movement of inmates
4   and detainees among its facilities for at least the next 30 days. Though there will be
5   exceptions for medical treatment and similar exigencies, this will prevent transmissions
6   between institutional populations.

7       <u>Modified Operations</u>:  Finally, the Action Plan requires wardens at BOP facilities to
8   modify operations in order to maximize social distancing.

9       Taken together, these measures are designed to sharply mitigate the risks of COVID-
10  19 transmission. Defendant's speculative concerns should not be permitted to overwhelm
11  the careful balance of factors prescribed by Congress in determining whether he is properly
12  subject to pretrial detention. See *United States v. Adam Martin*, 2020 WL 1274857, at *3
13  (D. Md. Mar. 17, 2020) (rejecting similar argument, and noting that "as concerning as the
14  COVID-19 pandemic is," the court's consideration "must in the first instance be an
15  individualized assessment of the factors identified by the Bail Reform Act.").

16  **CONCLUSION**

17      For these reasons, the United States respectfully requests that Defendant's Motion
18  to Amend Conditions of Release be denied.

19      DATED: March 25, 2020        Respectfully submitted,

20

21                              ROBERT S. BREWER, Jr.
                            United States Attorney

22

23                             /s/ *Deborah Bercovitch*
                            Deborah Bercovitch
                            Special Assistant United States Attorney

24

25

26

27

28

Opposition to Defendant's Motion to Amend
Conditions of Release

*United States v. Francisco Miranda Espinoza*,
Case no. 19CR4609